## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

**Heart House Ministries, Inc.,**

                               **Case No: 6:12-bk-08066-ABB**

                               **Chapter 11**

                    **Debtor.**

_____/

## DISCLOSURE STATEMENT

       Heart House Ministries, Inc., as Debtor in this Chapter 11 reorganization, submits this disclosure statement (hereinafter "disclosure statement") to its creditors and other parties in interest.

### I. INTRODUCTION

       Heart House Ministries, Inc., as Debtor,  filed a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division on June 13, 2012. Heart House Ministries, Inc.  is a Florida non-profit corporation founded in October of 2000, and operates under the laws of the State of Florida**.** Debtor hereby submits this disclosure statement. Hereinafter, unless otherwise indicated,  the term "Debtor" shall mean Heart House Ministries, Inc.

       This disclosure statement is submitted by the Debtor, pursuant to 11 U.S.C. §1125, to all known holders of claims against the Debtor and all other interested parties as provided by law. Its purpose is to disclose adequate information concerning the Debtor to the holders of claims or interests in this matter so that they can make a reasonably informed decision in voting for or against acceptance of the Plan of Reorganization (the "Plan") presently on file with the Court and a copy of which accompanies this Disclosure Statement. After notice and a hearing, the Court will determine if this Disclosure Statement contains adequate information upon which the holders of claims or interests will be able to make an informed judgment about the Plan. All creditors and interested parties should inspect the contents of this Disclosure Statement and the accompanying Plan.

       The financial information contained in this Disclosure Statement was prepared by the Debtor and has not been subjected to a certified audit.

### II. BACKGROUND OF CHAPTER 11 CASE
### A. History of the Debtor

       The Debtor is a non-profit corporation founded in October of 2000. The Debtor is Christian

religious congregation which is not affiliated with any national denomination. The Debtor owns three buildings, a church sanctuary, a parsonage for the minister and his family, and a single family dwelling that was to be the future location of the church. The Debtor operates its offices out of its church building located at 796 Hooks Street, Clermont, Florida 34711 which it owns. It is not a lessee of any residential or non-residential leases of real property.

### B. Reasons For Filing Chapter 11

When the Debtor originally purchased the church property located at 796 Hooks Street and the parsonage located at 10528 Spring Lake Road in Clermont, the purchase price for 796 Hooks Street was $1,700,000.00 with approximately $1,300,000.00 financed and for 10528 Spring Lake Drive was $478,500.00 with approximately $278,500.00 financed.

In June of 2010 the debtor began working with then Center State Bank (hereinafter "Center State") President Tom White and his staff on the refinance of the loans scheduled to mature in May of 2011. In December of 2010 Debtor was informed that in order for the refinance to take place it would require a key man life insurance policy of $1,000,000.00 and it should be secured as soon as possible. The Debtor complied with the requirements of Center State.

The Debtor continued to work with Center State on the renewal of the loans in May of 2011. The Debtor was current on both loans at this time, however in the first week of May 2011 Debtor received a phone call from a Bank representative stating that Center State was in the process of selling off the two loans and would close on them in thirty days with another party. At this time the Debtor was informed that if the Ministry would like to buy out the loan they could do so at a much discounted amount, but the buyout would need to be done within the 30 day period. The Debtor was not able to raise capital to purchase the loans.

Acquired Capital purchased both of the loans and a representative contacted Debtor in mid-July of 2011 to inform Debtor that his organization now held Debtor's mortgages. He asked the Debtor what they would like to do and was informed that the Debtor's desire was to renew the Mortgages for a five year period and with twenty-five year amortization just as Debtor had been working toward with Center State. Acquired Capital declined to negotiate a settlement.

Acquired Capital for the next several months invoiced the ministry on amounts due and the ministry met those requirements. On October 28, 2011 the Debtor issued a check to Acquired Capital for $8,460.00 as shown in the invoice sent to Debtor. Upon receipt of the check a representative informed the Debtor and that the amount sent was incorrect and that the amount should have been $10,000.00. Conversation escalated and ended with threats by the representative to foreclose on both of the properties. An action to foreclose on the properties was commenced in the Circuit Court of Lake County Florida which was assigned case number 2012-CA-000200. A final judgment of foreclosure was obtained. Given the pending foreclosure sale and the unwillingness of the mortgagee to restructure the debt, the board of directors voted to file for protection under Chapter 11. The chapter 11 case was filed on the eve of the foreclosure sale.

2

## C. Operation of Debtor Under the Provisions of Chapter 11

Immediately upon filing, the Debtor initiated actions required to stabilize, reorganize and redirect the company.

The Debtor filed a motion for use of cash collateral and obtained a final order authorizing use of cash collateral.

The Debtor timely filed a motion for adequate protection for its utility companies used by the business.

The Debtor timely obtained approval to pay salaries to managers and insiders.

The Debtor pays regular monthly and adequate protection payments to its secured mortgage holder and has timely made those payments.

Accounts were kept current with vendors for the postpetition period.

The Debtor took immediate steps to keep all post petition taxes current.

The Debtor has leases its unused space in the church buildings to other religious groups to increase its cash flow.

The postpetition performance of the Debtor is generally reflected in the monthly financial reports which have been filed in the Bankruptcy Court each month since the filing of the Chapter 11 petition. The Debtor has one partial report for June of 2012. The Debtor has filed six full reports thereafter for the months of July, August, September, October, November and December of 2012. These full reports show sufficient cash flow and the summary pages are attached as Exhibit "A."

## D. Present Financial Condition of the Debtor

The financial condition of the Debtor for future operations remains stable. The Debtor's business continues to produce a positive cash flow sufficient to fund a plan of reorganization as evidenced by Exhibits "A" and "B."

## E. Proposals for Future Operation

The Debtor proposes to continue operation of the company along the lines of operation that have been established during the reorganization.

The management team headed by Clay D. Hartzog, President, Marta Hartzog Secretary and Leonard Thompson , Vice President Will continue to be actively involved in day-to-day operations.

Debtor will continue to work to increase its future cash flow by leased space to other compatible religious organizations and to build the membership of its congregation.

Payments will be timely made to priority, secured and unsecured creditors as restructured by the Plan of Reorganization.

The Projected Summary of Income and Expenses attached as "Exhibit B" indicates that the reorganized Debtor will be able to operate with sufficient profit to fund the plan. While the economy is expected to improve the Debtor did not project an increase in rent revenue. The Debtor is well able to operate with its current occupancy rate and revenue stream.

### III. THE PLAN OF REORGANIZATION

A copy of the Plan of Reorganization that has been filed in conjunction with this Disclosure Statement is attached hereto as "Exhibit D".

### Summary of Plan

The Debtor's plan creates the following classifications of claims to be grouped and paid in the following manner:

**Priority Tax Claims**

Class 1 includes Priority Tax Claims. The Allowed Claims for taxes owed to governmental units, pursuant to 11 U.S.C. §507(a)(8)(A). The Debtor owes the Internal Revenue Service a total amount of $17,978.06 of which $9,428.99 is secured, $8,281.94 is unsecured and $267.13 are priority taxes. Class 1 priority portion of the Claim in the amount of $267.13 will be paid upon the Effective Date of the Plan.

**IRS Secured Claim**

Class 2 consists of allowed secured claim of the Internal Revenue Service, in the amount of $9,428.99. Claimant shall retain its lien. This Claim shall be paid one hundred percent (100%) over a five year period with three percent (3%) interest. The Debtor shall pay Claimant $169.43 each month for sixty (60) consecutive months. The first payment shall be paid on the first day of the month after Effective Date of the Plan and on the first day of the month thereafter until paid in full.

**Wells Fargo Bank, Trustee Secured Claim for Real Property Tax**

Class 3 consists of allowed secured claim of Wells Fargo Bank, N.A., as Trustee for the Tax Liens Securitization Trust 2010-1, in the form of a Tax Certificates secured by real property located at 10528 Spring Lake Drive, Clermont, Florida 34711, in the amount of $6,363.27 which includes accrued interest. The Claimant purchased tax certificate number 4611 from Bob McKee, Tax Collector for Lake County, for the tax year 2009, on account number 1122251005-000-01000. The Claimant has made an application for a tax deed and also paid real property taxes owed for the years

4

2010 and 2011. Claimant shall retain its lien. This Claim shall be paid one hundred percent (100%) in equal monthly payments over sixty (60) consecutive months with interest pursuant to 11 U.S.C. §1129(a)(9)(D). The real property taxes owed for the year 2009 shall be amortized at five percent interest (5%) interest and the taxes owed for the years 2010 and 2011 shall be amortized at eighteen percent (18%) interest. The first payment shall be paid on the first day of the month after Effective Date of the Plan and on the first day of the month thereafter until paid in full.

### TC 10L, LLC, Secured Claim for Real Property Tax

Class 4 consists of allowed secured claim of TC 10, LLC, USAMERIBANK , in the form of a Tax Certificate secured by real property located at 796 Hooks Street, Clermont, Florida 34711 in the amount of $22,351.45 which includes accrued interest. Claimant purchased tax certificate number 8439 from Bob McKee, Tax Collector for Lake County, for the tax year 2009, on account number 302226120-000-00100. Claimant shall retain its lien. This Claim shall be paid one hundred percent (100%) in equal monthly payments over sixty (60) consecutive months with interest pursuant to 11 U.S.C. §1129(a)(9)(D). The real property taxes owed for the year 2009 shall be amortized at nine and one half percent (9.5%) interest. The first payment shall be paid on the first day of the month after Effective Date of the Plan and on the first day of the month thereafter until paid in full.

### Bob McKee Tax Collector, Secured Claim for Real Property Tax

Class 4 consists of allowed secured claim of Bob McKee, Tax Collector for Lake County, Florida for ad valorem secured real property taxes secured by real property located at 10528 Spring Lake Drive, Clermont, Florida 34711, in the amount of $361.35 plus accrued interest, if any, on account number 1122251005-000-01000. Claimant shall retain its lien. This Claim shall be paid one hundred percent (100%) within one hundred twenty (120)  days from the effective date of the Plan.

### Bob McKee Tax Collector, Tangible Tax

Class 4 consists of allowed secured claim of Bob McKee, Tax Collector for Lake County, Florida for tangible property tax. On account number 0000000000-000-91864, the amount of $18.67 is due for the year 2012 and $16.55 is due for the year 2009. On account 0000000000-000-30105, the amount of $18.67 is due for the year 2012 and $22.65 is due for the year 2011. Claimant shall retain its lien. This Claim shall be paid one hundred percent (100%) plus accrued interest, if any, within one hundred twenty (120) days from the effective date of the Plan.

### Secured Claim of Acquired Capital

Class 7 consists of the two allowed secured claims of Acquired Capital I, L.P. These claims are cross collateralized on two parcels of real property with one being on the land with the church buildings located at 10528 Spring Lake Drive, Clermont, Florida 34711 and the second the parsonage located at 796 Hook Street, Clermont, Florida 34211. The first claim is for $1,406,486.87 of which  $875,000.00 will be treated as secured and $531,486.87 will be treated as unsecured and paid according to the terms of Class 9. The second claim is for $255,829.72 of which $220,000.00 will be treated as secured and $35,829.72 will be treated as unsecured and paid according to the terms of Class 9. Claimant shall retain its liens. The secured claim of $875.000.00 shall be paid one hundred percent (100%) and shall be amortized over a twenty (20) year period at five and one quarter

percent (5.25%) interest with a balloon payment due in month sixty (60). On the first day of the month following the Effective Date of the Plan, the Debtor shall pay $5,896.14 and that amount on the first day of each consecutive month thereafter for a total of fifty-nine (59) payments with a balloon payment of $736,137.40 due in month sixty (60). However, the Debtor reserves the right to pay the principal amount at any time during this amortization period without further penalty or interest. The Debtor intends to refinance the loan on or prior to the balloon payment. The secured claim of $220,000.00 shall be paid one hundred percent (100%) and shall be amortized over a twenty (20) year period at five and one quarter percent (5.25%) interest with a balloon payment due in month sixty (60). On the first day of the month following the Effective Date of the Plan, the Debtor shall pay $1,482.46 and that amount on the first day of each consecutive month thereafter for a total of fifty-nine (59) payments with a balloon payment of $185,085.97 due in month sixty (60). However, the Debtor reserves the right to pay the principal amount at any time during this amortization period without further penalty or interest. The Debtor intends to refinance the loan on or prior to the balloon payment.

## Secured Claims on Debtor's Surrendered Real Property

Class 8 consists of the secured claims on Debtor's surrendered real property located at 12200 Hancock Road, Clermont, Florida 34711.This Class consists of the following claimants: First Southern Bank has a claim consisting of a first mortgage in the amount of $472.835.49; Kyracis and Marie Orthodoxou have a claim consisting of a second mortgage in the amount of $29,488.97; FCP & Son, LLC has a claim consisting of a real property tax certificate in the amount of $412.75. These claimants shall retain their interest and/or liens on the real property. The claims in this Class are substantially similar in that their claims run with and attach to parcel of real property owned by Debtor. The Debtor shall surrender its interest in the real property in full satisfaction of these claims. In the event that the mortgagees have not foreclosed their interest under law within eight months of the effective date of the plan the Debtor may quit claim any interest it has in the real property to the respective lien holders.

## Large General Unsecured Claims

Class 9 consists of allowed two large general unsecured claims of the Debtor each with a claim of greater than one hundred thousand dollars ($100,000). This Class consists of the claim of Acquired Capital in the amount of five hundred sixty-seven thousand three hundred sixteen dollars and fifty-nine cents ($567,316.59) and the claim of Kyracis and Marie Orthodoxou in the amount of one hundred forty-nine thousand two hundred thirty-two dollars and thirty-one cents ($149,232.31) with total six hundred sixty-six thousand five hundred forty-eight dollars and ninety cents ($666,548.90). The allowed claims of this Class shall be paid six thousand six hundred sixty-five dollars and fifty cents ($6,665.50) plus five percent (5%) interest over the term of the Plan. This Class will be paid three hundred seventy-seven dollars and thirty-seven cents ($337.37) Pro-Rata among the claims in this Class quarterly (once every three months) for twenty (20) consecutive quarters with the first payment commencing sixty (60) days from the Effective Date of the Plan.

**Small General Unsecured Claims**

Class 10 consists the allowed small general unsecured claims with each having a value of less than thirty thousand dollars ($30,000.00). The amount of claims in this Class total forty-seven thousand one hundred sixty-eight dollars and fifty-two cents ($47,168.52). The allowed claims of in this Class shall be paid thirty percent (30%) of each claim plus five percent (5%) interest over the life of the Plan. This Class will be paid eight hundred one dollars and twelve cents ($801.12) Pro-Rata among the claims in this Class quarterly (once every three months) for twenty (20) consecutive quarters with the first payment commencing sixty (60) days from the Effective Date of the Plan.

**Interests in Debtor**

Class 11 consists of the ownership interest in the Debtor. The ownership interests shall remain unaltered and unimpaired.

**Executory Contracts**

Any executory contract or unexpired lease not specifically addressed in the Plan or specifically assumed pursuant to authorization by the Court on or before the Effective Date shall be deemed rejected pursuant to Section 356 of the Code.  Any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such claim within (30) days after the entry of an order confirming the Plan. The Debtor specifically assumes the non-residential real property leases with its following tenants: Believer's Christian Academy; Bright Start Learning Center; Luz Vida; and River Counseling.

**IV. FINANCIAL INFORMATION OF THE REORGANIZED DEBTOR AND LIQUIDATION VALUATION**

The Debtor's Plan projects payments to all creditors in an amount significantly exceeding any estimated distribution under a Chapter 7 liquidation. There appears to be no likelihood that unsecured creditors would receive more under a Chapter 7 liquidation proceeding than they would receive in this Chapter 11 Plan of Reorganization. All valuations of assets are merely opinions of value; however, the Debtor is satisfied that an asset sale in any form would yield a small return to unsecured creditors.

The Debtor's assets are its real property, cash in banks, accounts receivable in the form of rents due and owing and office furnishings. The cash and receivables are  liened by the Secured Creditor. There would not be a substantial distribution to unsecured creditors. It is unlikely that this case would be converted to a Chapter 7 given the fact that the secured creditor has a lien on all of the Debtor's assets and a foreclosure is pending. In the unlikely event that this case was converted to Chapter 7 an administration of a bankruptcy estate of this nature is likely to take over one year to administer and close. A liquidation analysis is attached hereto as "Exhibit C".

The alternatives to this Plan of Reorganization include dismissal of this case or a conversion

to a Chapter 7 proceeding. Since there are no free and clear assets it is unlikely the court will convert this case to a Case under Chapter 7. Even if the case was converted to a Chapter 7 case additional layers of administrative costs would be incurred by the estate. The Chapter 7 trustee would be required to auction or dispose any unpledged assets at forced liquidation. The Chapter 7 trustee would be required to collect accounts receivable by demand or litigation. In the alternative, the Debtor's Plan projects payments to general unsecured non-insider creditors of one hundred percent over a six month period after confirmation.

## V. ELEMENTS OF CONFIRMATION

In this section an attempt will be made to give an overview of the important elements of law which must be met for the Debtor to obtain confirmation of the Plan.

This discussion is merely an overview and each creditor should consult counsel for specific legal advice. All Chapter 11 plans must classify creditors according to the nature of their debts. Please consult the Plan to ascertain to which class your claim has been assigned. Absent "cram down," which is not discussed herein, in order for the Plan to be confirmed by the Court, it must be accepted by the holders of two-thirds (2/3) in amount and more than one-half (½) in number of claims in each class of claims that is impaired under the Plan. Generally, a class is impaired unless the Plan leaves unaltered the legal, equitable, and contractual rights of the creditors therein and/or cures all defaults plus damages based thereon and does not otherwise alter, the legal, equitable and contractual rights of the creditors therein and/or provides as of the effective date of the Plan cash equal to the amount of the claim. Creditors left unimpaired by the Plan are by law deemed to have accepted the Plan.

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting

8

purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

Another important element of confirmation of the Plan is the "feasibility" element. The feasibility element provides that the Court must find that the confirmation of the Plan will not likely be followed by the liquidation or need for further reorganization of the Debtor. This, in simple terms, means that the Court must find that the Debtor will more likely than not be able to make all payments proposed under the Plan.

DATED this 8th day of February, 2013.

Clay D. Hartzog, Sr.
President
Heart House Ministries, Inc.

/s/ James H. Monroe
James H. Monroe
James H. Monroe, P.A.
Florida Bar No. 311995
P.O. Box 540163
Orlando, FL  32854-0163
Telephone No:  (407) 872-7447
Facsimile No.:  (407) 872-7491
Email: jamesmonroe@jamesmonroepa.com
Attorney for Debtor